**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PATRICK WRIGHT, | ) | |
| | ) | CASE NO. 1:15-cv-01931 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 11).

The issue before the undersigned is whether the final decision of the Acting Commissioner of

Social Security ("Commissioner") denying Plaintiff Patrick Wright's ("Plaintiff" or "Wright")

application for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and

Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act

("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*., is supported by substantial evidence and,

therefore, conclusive.

For the reasons set forth below, this Court AFFIRMS the final decision of the

Commissioner.

## I.  Procedural History

Plaintiff filed applications for POD, DIB, and SSI in October of 2011.  (Tr. 169-173).

Plaintiff alleged he became disabled on August 1, 2011.  (Tr. 170).  The Social Security

Administration denied Plaintiff's application on initial review and upon reconsideration.  (Tr. 96-

101, 108-115).

At Plaintiff's request, an administrative law judge ("ALJ") convened an administrative

hearing on April 10, 2014 to evaluate his application.  (Tr. 15-22.)  Plaintiff, represented by

counsel, appeared and testified before the ALJ.  (*Id*).  A vocational expert ("VE") also testified.

(*Id*).

On May 19, 2014, the ALJ issued an unfavorable decision, finding Plaintiff was not

disabled.  (Tr. 16-22).  After applying the five step sequential analysis,[1] the ALJ determined

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i).  Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id*. § 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled.  *Id*. § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.  *Id*. § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).

Plaintiff retained the ability to perform work existing in significant numbers in the national economy, and that he was not disabled at any time between the alleged onset date and the date of the decision.  (*Id*.)  Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council.  (Tr. 7-11).  The Appeals Council denied the request for review, making the ALJ's determination the final decision of the Commissioner.  (Tr. 1-3).  Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 1383(c)(3).

## II.  Evidence

### A.  Personal and Vocational Evidence

Plaintiff was born in February of 1965 and was 46 years old on the alleged onset date, making him a "younger person" for Social Security purposes.  (Tr. 21); 20 C.F.R. §§ 404.1563(c) & 416.963(c).  Plaintiff has past relevant work as a material handler.  (Tr. 20).  Plaintiff has a limited education.  (Tr. 21).

### B.  Medical Evidence

#### 1. Medical Treatment

On December 10, 2013, Plaintiff was first seen by Dallas J. Fleming, M.D., for the purpose of establishing care.  (Tr. 458-60).  Plaintiff was recorded as being 5'6" tall and weighing 173 pounds.  (Tr. 458).  Surgical changes of the left arm, hip, and ankle were noted.  (Tr. 459).  Dr. Fleming ordered x-rays, referred Plaintiff to an orthopedist and for physical therapy, and recommended regular aerobic exercise.  (Tr. 459-461).  Left elbow x-rays demonstrated degenerative changes but no fracture, dislocation, or joint effusion.  (T. 416).  Left hip and pelvis x-rays revealed post-surgical changes of open reduction internal fixation (ORIF) proximal left femur.  (Tr. 417).  The surgical hardware was noted as intact and in appropriate position.  (*Id*.)

3

There was no acute fracture or dislocation, and the left hip joint space was maintained with mild acetabular osteophytes.  (*Id*.)  Left ankle x-rays revealed post-surgical changes and degenerative/arthritic changes at the tibiotalar joint.  (Tr. 419).  Lumbar spine x-rays revealed moderate degenerative changes at L1-2 and L5-S1.  (Tr. 420).

On December 17, 2013, Plaintiff was seen by physical therapist Judith David.  (Tr. 463). Objective findings revealed  "minimal limitation" in lumbar range of motion except for moderate limitation on extension, 4+/5 strength in all areas except 4-/5 with hip extension.  (Tr. 464-465). Plaintiff's gait had a "[w]ide base of support, left hip held abducted secondary to limited left ankle ROM, decreased stance time on left."  (Tr. 464).  Plaintiff was not fully compliant with a home exercise program, as he was performing exercises only when his schedule permitted.  (Tr. 428).  Plaintiff reported improvement with symptom management and functional activities and had decreased pain intensity, but wanted to discontinue physical therapy until he addressed problems with his left hip and left ankle.  (Tr. 431).

On January 10, 2014, Dr. Fleming noted that Plaintiff was doing well in physical therapy. (Tr. 477-78).  He continued to recommend regular aerobic exercise and a cessation of smoking. (*Id*.)

On January 20, 2014, Plaintiff was seen by Ian Alexander, M.D., for ankle pain.  (Tr. 480-83).  On examination, Plaintiff walked with a severe antalgic gait, had mild ankle swelling, severe tenderness, intact sensation, strong pulses, and decreased range of motion.  (Tr. 482). After reviewing x-rays, Dr. Alexander diagnosed left ankle osteoarthrosis.  (*Id*.)  He recommended arthroscopic evaluation, anterior debridement of of the ankle joint, and hardware removal.  (*Id*.)

4

On February 13, 2014, Plaintiff was seen by Patrick Sziraky, M.D., chiefly for complaints of left hip pain.  (Tr. 488).  Plaintiff had normal gait and normal posture.  (Tr. 489).  Left hip examination demonstrated normal range of motion except for abduction/adduction, 5/5 strength, positive tenderness on palpation, and negative crepitance.  (Tr. 489-90).  Other examination findings revealed negative straight leg raise, normal lumbar spine motion, bilateral lower extremities had equal motion of the hips and knees as well as normal strength, tone and stability and intact neurological examination in both lower extremities.  (Tr. 490).  Examination of the left elbow revealed a well-healed surgical incision, decreased range of motion and flexion, and mild tenderness.  (Tr. 490).  Dr. Sziraky diagnosed left trochanteric bursitis and left elbow tendonitis. (*Id*.)  He recommended hardware removal and a tennis elbow strap, and follow-up on an as needed basis.  (*Id*.)  Plaintiff declined corticosteroid injections for his elbow or any surgical intervention on his hip.  (*Id*.)

### 2.  Opinion Evidence

On January 31, 2012, Will Graham, M.D., performed a consultative examination, at the request of the State Agency.  (Tr. 246-53).  Plaintiff had a history of multiple injuries and had developed chronic left hip, left ankle and lower back pain, as well as difficulty using his left hand.  (Tr. 246-47).  Plaintiff stated that he did not use any ambulatory aid, could sit for ten minutes, stand for thirty minutes and walk 100 feet without difficulty.  (Tr. 247).  He lived alone and performed all of his activities of daily living without assistance.  (*Id*.)  On examination, Dr. Graham noted that Plaintiff had a non-antalgic gait with no difficulty tandem, toe or heel walking, full range of motion of cervical spine, and 5/5 strength in his bilateral upper extremities except of the left upper extremity; and 4/5 strength of the left wrist, finger and thumb.  (Tr.

5

247-48, 251).  Plaintiff had full range of motion of the bilateral shoulders, right elbow, bilateral wrists and all digits; full extension and flexion of his left elbow but significant loss of pronation and supination.  (Tr. 248, 250-52).  Plaintiff could perform fine motor tasks with his left hand but with some difficulty.[2]  (Tr. 248, 250).  Lumbar spine examination revealed minimal tenderness to palpation; negative bilateral straight leg raise; 5/5 strength and normal sensation of bilateral lower extremities; normal symmetric reflexes of bilateral knees and ankles; full range of motion of right hip, bilateral knees and ankles; and ten degree loss of rotation of the left hip.  (Tr. 248, 250, 252-53).  Lumbar spine x-rays showed some loss of the normal curvature and mild changes (Tr. 248).  Dr. Graham assessed left greater trochanteric bursitis associated with hardware pain; painful left ankle hardware; chronic low back pain without any evidence of radiculopathy; residual elbow deformity and dysfunction at the elbow; chronic numbness in his hand; and mild difficulty with left hand fine motor function.  (Tr. 248).  Dr. Graham opined that Plaintiff was "best suited" for sedentary work; had no problem with overhead use of his extremities; and had "mild" difficulty performing fine motor function with his left hand.  (Tr. 249).

On February 11, 2012, State Agency physician Leanne Bertani, M.D., opined that Plaintiff could perform a range of light work, including the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an 8-hour workday; stand/walk for six hours in an 8-hour workday; frequently push/pull with the left upper extremity frequently; limited handling and fingering with the left upper extremity, and no climbing ladders, ropes or scaffolds.  (Tr. 58-60, 67-69).

On June 14, 2012, John Kata, D.O., evaluated Plaintiff and completed a physical RFC

---

[2]  Plaintiff is right hand dominant.  (Tr. 250).

6

assessment form.  (Tr. 255-57).  After a brief physical examination, Dr. Kata noted that Plaintiff's "right ankle reveals palpable hardware on both the lateral and medial malleoll and I advised the patient that he should consult an orthopedic surgeon in regard to this hardware.  The patient's left femur showed an extensive scar from previous injury and surgery and examination of his left arm extensive scars involving the upper and lower left arm, again, from prior injury." (Tr. 256).  Dr. Kata opined that Plaintiff, in an 8-hour workday, had the capacity to sit for two hours, stand for two hours, and walk for one hour.  (Tr. 257).  In addition, Dr. Kata found that Plaintiff could lift/carry 10 pounds continuously, 11 to 20 pounds frequently, and never lift more than 20 pounds.  (*Id*.)  He also noted Plaintiff had moderate restrictions in his ability to be around moving machinery or to be exposed to marked changes in temperature and humidity.  (*Id*.)  He noted Plaintiff could push/pull, perform fine manipulation, and simple grasping with the right hand, but could not perform any of these activities with the left hand.  (*Id*.)

On August 14, 2012, Kourosh Golestany, M.D., a state agency physician, reviewed the evidence of record and affirmed Dr. Bertani's opinion.  (Tr. 79-81, 89-91).

On March 20, 2014, physical therapist Karin Kleppel, P.T., performed a Functional Capacity Evaluation (FCE) "to assist the physician in making recommendations regarding client's application for disability."  (Tr. 438-51).  Plaintiff reported that he lived alone, had difficulty donning pants and socks, was unable to tie his shoelaces, had difficulty cutting food due to lack of sensation in the left hand, had difficulty with all shopping activities, had difficulty with laundry due to the need to bend and lift, and had difficulty with all cleaning.  (Tr. 442). Plaintiff's own estimate of his functional tolerances included the ability to sit for sixty minutes at a time without a break, stand for sixty minutes at a time without a break, and walk 4 to 5 minutes

7

at a time without a break.  (Tr. 442).  His observed functional tolerances at one time without a

break included sitting for 34 minutes, and standing and walking 51 minutes.[3]  (Tr. 439, 444).

Plaintiff had normal range of motion of the cervical spine, good range of motion and strength of

the right lower extremity, and good range of motion of the left knee.  (Tr. 439).  Conversely, he

had decreased range of motion of the lumbar spine and lower left extremity; decreased range of

motion and strength in the upper extremities including decreased muscle control in the left upper

extremity;  decreased strength core and scapulae muscles; decreased balance, and decreased grip

and pinch strength as well as decreased manual dexterity.  (Tr. 439).  Ms. Kleppel noted that

Plaintiff tested in the medium physical demand level indicating an occasional lift weight of 27

pounds, and push/pull strength was 48 pounds force/60 pounds force.  (Tr. 440).

On April 24, 2014, Dr. Fleming completed a "Medical Source Statement of Ability To Do

Work-Related Activities (Physical)."  (Tr. 452-57).  Dr. Fleming opined that Plaintiff could lift

or carry up to 10 pounds frequently, 16 to 18 pounds occasionally, and could never lift more than

21 pounds.  (Tr. 452).  He explained that these limitations were caused by decreased range of

motion and strength in both arms and the left leg, as well as by difficulty grasping and decreased

balance.  (*Id*.)  Dr. Fleming further opined that Plaintiff, in an 8-hour workday, could sit one hour

at a time for a total of three hours; stand one hour at a time for a total of two hours; and walk ten

minutes at a time for a total of one hour.  (Tr. 453).  Plaintiff did not need a cane to ambulate.

(*Id*.)  He indicated that Plaintiff could never reach overhead with either hand, but could

occasionally reach in all other directions while seated; could never handle, finger, or feel with the

non-dominant left hand, but with the right hand he could occasionally handle, frequently finger,

---

[3]  Ms. Kleppel acknowledge that these tolerances were limited by the length of testing.  (Tr. 439).

8

and continuously feel; and, could frequently operate foot controls with the right foot, but never

with the left.  (Tr. 454).  With respect to postural activities, Dr. Fleming believed that Plaintiff

could never climb ladders or scaffolds, balance, stoop, crouch, kneel, or crawl, but could

occasionally climb stairs and ramps.  (Tr. 455).  Dr. Fleming found Plaintiff could occasionally

operate a motor vehicle, but could never be near unprotected heights or moving mechanical parts.

(Tr. 456).  He concluded that Plaintiff was "unable to lift, carry, push/pull or bend to pick up,

required weights for his job ... [and] [u]nable to sit for 4 hours."  (Tr. 457).

**C.  Hearing Testimony**

At the April 10, 2014 hearing, Plaintiff testified as follows:

- He completed the tenth grade, and never obtained a GED.  (Tr. 35).

- He is 5'6" tall and weighs 170 pounds.  He is right-handed.  (Tr. 35).

- He lives alone in a house.  (Tr. 36).

- He last received medical treatment in March of 2014.  He is being treated for numerous ailments, including his "left elbow, strength in left hand, my back, pins and plates in my left hip and femur, and pins, screws and plates in my left ankle." (Tr. 36).  He did not receive any treatment between June of 2012 until November of 2013 because he did not have a job or insurance.  (Tr. 37).  He resumed treatment because there was a "lack of information" and to "get fixed too."  (Tr. 38).

- His last job was at a food preparation facility.  (Tr. 37).  He quit that position because he had to work in a highly refrigerated environment, which really bothered him.  (*Id*.)

- He no longer has a driver's license.  (Tr. 38).

- His left hip and left ankle started to bother him in 2001.  When they begin to hurt, he has to stop what he is doing.  The pain affects his ability to stand, walk, and carry weight.  (Tr. 39).  His ability to stand and "all that stuff" decreased dramatically over time.  (Tr. 40).

- He injured his left arm when he was in his late twenties.  His grip strength is not what it used to be.  He has numbness in his left hand, which makes it difficult to hold items for a prolonged period of time.  (Tr. 40-41).  He also has issues with dexterity.  (Tr. 41).

- He has back pain, and some days are better than others.  (Tr. 44).  Exertion exacerbates the pain.  (Tr. 44-45).

- He has screws or plates in his left femur, left hip, and left ankle.  (Tr. 45).

- He opined that he could sit an hour or two without needing to get up and walk around.  His inability to sit longer is caused by lower back pressure.  (Tr. 46).  He could stand without needing to sit for, at most, one hour due to pain in his ankle, back, hip, and knee.  (Tr. 46-47).

- He could not say how far he could walk as he has not "pushed that to the limits." (Tr. 47).  He did note that at a physical therapy evaluation, he was able to walk for approximately six minutes before he was done.  (*Id.*)

The ALJ posed the following hypothetical question to the VE:

For this question please consider a younger individual with a limited education under the regulations, no high school education, or no high school diploma rather. The first hypothetical, Ms. Smith, the individual can lift, carry, push and pull 20 pounds occasionally and ten pounds frequently.  This person can sit for six hours, can stand and/or walk for six hours in a normal workday.  This person cannot climb ladders, ropes or scaffolds.  This person would be limited to frequent handling and fingering with the left upper extremity.

(Tr. 49).

The VE testified that such an individual could perform a number of jobs and identified the following three examples: ticket seller, Dictionary of Occupational Titles ("DOT") § 211.467-030 (20,000 jobs locally, 60,000 in Ohio, 1.3 million nationally); assembler of electrical components, DOT § 729.687-010 (3,200 jobs locally, 8,500 in Ohio, 200,000 nationally); sales clerk, DOT § 299.677-010 (10,000 jobs locally, 30,000 in Ohio, 500,000 nationally).  (Tr.49-50). The VE testified that her testimony was consistent with the DOT.  (Tr. 50).  Plaintiff's counsel

posed a question to the VE as well, asking "[i]f we were to take the [ALJ's] hypothetical and modify it by saying that [the hypothetical person] could only do sedentary work, and could only use the one hand, would there be any jobs that you could find for him to do?"  (Tr. 50).  The VE testified there would be no jobs for such an individual.  (*Id*.)

### III.  Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law in his May 19, 2014 decision:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.

2.  The claimant has not engaged in substantial gainful activity since August 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: status post open reduction internal fixation operation on the left femur, degenerative disc disease, osteoarthritis of the left ankle, and degenerative joint disease of the left elbow (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant cannot climb ladders, ropes, or scaffolds.  He can frequently push, pull, handle, and finger with the left upper extremity.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on February ** 1965 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

11

8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-22).

## IV.  Disability Standard

A claimant is entitled to receive a Period of Disability, Disability Insurance Benefits or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 20 C.F.R. §§ 404.1505, 416.905(a).

## V.  Standard of Review

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence.  *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 405 (6th

12

Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kennedy v. Astrue*, 247 Fed. App'x 761, 2007 WL 2669153, at *3 (6th Cir. 2007); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed. (*Id.*)

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *See Kennedy*, 247 Fed. App'x 761, 2007 WL 2669153, at *3; *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  Analysis

Wright claims the ALJ erred by rejecting the opinions of multiple examining sources, including both treating and non-treating sources.  (Doc. No. 14 at pp. 6-14).

### A.  Treating Source Opinion

While Plaintiff's sole assignment of error does not clearly differentiate between the weight accorded to treating sources versus examining but non-treating sources, the Court

13

addresses the issues separately.  Plaintiff argues that the ALJ erred by rejecting the opinion of Dr. Fleming, whom Plaintiff characterizes as a "treating source."  (Doc. 14 at pp. 10-11.)

It is well-established that the ALJ must afford special attention to findings of a claimant's treating source.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  This doctrine, known as the "treating source rule" reflects the Social Security Administration's awareness that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history.  *Id*.; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2).  The treating source rule dictates that opinions from treating physicians are given controlling weight if the opinion is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "consistent with the other substantial evidence in the case record."  *Wilson*, 378 F.3d at 544.

When a treating source's opinion is not entitled to controlling weight, the ALJ is required to establish the weight given to the opinion by applying factors found in the governing regulations.  20 C.F.R. §§ 416.927(c)(1)-(6), 404.1527(c)(1)-(6).  These factors include: (1) the examining relationship; (2) the treatment relationship; (3) the length of treatment and frequency of examination; (4) the opinion's supportability and consistency; (5) the source's specialization; and (6) any other factors tending to support or contradict the opinion.  *Id*.  The regulations further require the ALJ to provide "good reasons" for the weight ultimately given to the opinion.  *See Wilson*, 378 F.3d at 544 (*quoting* SSR 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188 at *5).  The reasons must be sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinions and the reasons for that weight.  *Id*.

The Sixth Circuit emphasized in *Gayheart v. Commissioner of Social Security* that the

14

above standard requires two distinct analyses when assessing the treating source's opinion. *Gayheart*, 710 F.3d 365, 375-77; *Aiello-Zak v. Comm'r of Soc. Sec.*, 47 F. Supp. 3d 550, 555 (N.D. Ohio 2014) (Baughman, M.J.)  First, the ALJ must determine whether a treating source's medical opinion is entitled to controlling weight.  *Gayheart*, 710 F.3d at 376.  Under this first step, the ALJ must consider whether the opinion is (1) well-supported by clinical and laboratory diagnostic techniques, and (2) consistent with other substantial evidence.  *Id*. at 376.  If the ALJ determines the treating physician's opinion is not entitled to controlling weight, he or she must then specify the weight given that opinion, based on consideration of the factors outlined in the regulations.  *Id*. ("[T]hese factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.").  However, the text of the regulations guiding the ALJ's review of a claimant's treating source opinions only requires the ALJ to "consider" the factors set forth when making his decision.  20 C.F.R. §§ 416.927, 404.1527.  A factor-by-factor analysis is not required so long as the ALJ's decision clearly conveys why the opinion was credited or rejected.  *See Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons...for the weight...give[n] [to the] treating source's opinion' ...Procedurally, the regulations require no more.") (omitted text indicated in original).

Courts have established that an erroneous treating source analysis may not, in some circumstances, automatically require remand where the substantive aspects of the standard are met, supported by good reasons that are discernible from the opinion.  For instance, remand may not be necessary where an ALJ fails to "strictly follow the *Gayheart* template, as long as the ALJ

15

adequately addresses the required factors and articulates good reasons for discounting the treating

source's opinion.  *Aiello-Zak*, 47 F. Supp. 3d at 558 (*citing Dyer v. Soc. Sec. Admin*, 568 Fed.

App'x 422 (6th Cir. 2014)); *see also Cox v. Comm'r of Soc. Sec.*, 5:14 CV 2233, 2015 U.S. Dist.

LEXIS 145555, 2015 WL 6545657, *8 (N.D. Ohio Oct. 27, 2015) (Knepp, M.J.) (rejecting

plaintiff's argument that the ALJ's treating physician analysis failed because he "telescop[ed] the

two-step analysis" provided by *Gayheart*, finding it sufficient that the ALJ reasoned in the

analysis that the opinion was not consistent with other evidence); *see Aiello-Zak*, 47 F. Supp. 3d

at 558-59 (finding treating source analysis sufficient where ALJ carefully summarized the results

of the claimant's objective medical records, noted his daily activities, and explained why the

treating source's opinion was inconsistent with these facts).  Further, citing *Wilson*, the Sixth

Circuit has held:

> [T]he good reason requirement does not require conformity at all times. Violation
> of the rule constitutes harmless error if the ALJ has met the goals of the
> procedural requirement—to ensure adequacy of review and to permit the claimant
> to understand the disposition of his case—even though he failed to comply with
> the regulations terms.  An ALJ may accomplish the goals of this procedural
> requirement by indirectly attacking the supportability of the treating physician's
> opinion or its consistency with other evidence in the record.

*Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. App'x 435, 440 (6th Cir. 2010) (internal citations

omitted).  The *Coldiron* decision went on to explain that "courts look to the ALJ's decision itself,

and not other evidence in the record, for this support."  *Id*.

Here, the ALJ addressed Dr. Fleming's opinion as follows:

> Dallas Fleming, M.D. offered an opinion that the claimant can perform less than
> sedentary work with extreme limitations in sitting, standing, and walking but I
> cannot afford it more than little weight because the opinion fails to offer
> diagnoses or specific references to clinical findings that lead to the opinion.  Dr.
> Fleming has had a very short treating relationship with the claimant.  His opinion

16

is also inconsistent with the lack of treatment in this case and the claimant's daily activities.  (10F/1-6).

(Tr. 31-32).

Plaintiff specifically argues that the ALJ erred by rejecting the sitting, standing, and walking limitations assessed by Dr. Fleming.  (Doc. 14 at pp. 9-11).  In his aforementioned opinion, Dr. Fleming limited Plaintiff to no more than 3 hours total of sitting, two hours of standing, and one hour of walking in an 8-hour workday.  (Tr. 453).  The ALJ clearly rejected these limitations assessed by Dr. Fleming.[4]

First, the ALJ explained that one of the reasons Dr. Fleming's opinion was ascribed little weight was the "very short" treating relationship with the claimant.  (Tr. 20).  Plaintiff appears to suggest this is "irrelevant," and asserts that the lack of treatment was due to a lack of insurance.  (Doc. No. 14 at p. 10).  However, the number of times Plaintiff was seen by Dr. Fleming is very relevant to the issue of whether Dr. Fleming can even be considered a treating source.  "The question is whether [the claimant] had the ongoing relationship with [the physician] to qualify as a treating physician **at the time he rendered his opinion**."  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 506 (6th Cir. 2006) (emphasis added).  In *Kornecky*, the Sixth Circuit declined to find a treating physician relationship, noting that subsequent visits to a physician after

---

[4]  Social Security Ruling (SSR) 83-10, 1983 SSR LEXIS 30 states that a "full range of light work requires standing or walking, off and on, for a total of *approximately* 6 hours of an 8-hour workday." SSR. 83-10, 1983 SSR LEXIS 30, 1983 WL 31251, at *6 (1983) (emphasis added).  The ruling "does not explicitly preclude light work for an individual who cannot stand or walk for 6 hours of an 8-hour workday."  *Sulecki v. Comm'r of Soc. Sec.*, No. 1:13-CV-1597, 2014 U.S. Dist. LEXIS 73748, 2014 WL 2434631, at *14 (N.D. Ohio May 29, 2014) (Armstrong, M.J.)  Instead, it explains that "since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off or on, for a total of approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during the remaining time."  SSR 83-10, 1983 SSR LEXIS 30, 1983 WL 31251, at *6.

17

the RFC assessment had been made "could not retroactively render [the doctor] a treating physician at the time of the assessment." 167 Fed. App'x at 506 n.10; *accord Thompson v. Astrue*, 2011 U.S. Dist. LEXIS 84542 (N.D. Ohio, Aug. 2, 2011).  "Precedent in this Circuit suggests that a physician who treats an individual only twice or three times does not constitute a treating source."  *Hickman v. Colvin*, 2014 U.S. Dist. LEXIS 82914 (M.D. Tenn. June 18, 2014) (*citing Kornecky*, 167 Fed. App'x at 506-07; *Daniels v. Comm'r of Soc. Sec.*, 152 Fed App'x 485, 491 (6th Cir. 2005); *Coy v. Astrue*, 2012 U.S. Dist. LEXIS 161980, at *15 (N.D. Ohio Nov. 13, 2012); *Pethers v. Comm'r of Soc. Sec.*, 580 F. Supp. 2d 572, 579 n.16 (W.D. Mich. 2008)).

Here, the parties do not explicitly discuss the number of occasions Plaintiff was seen by Dr. Fleming for treatment.  The parties' recitation of the facts cite to only two visits occurring one month apart – first on December 10, 2013 and again on January 10, 2014.  (Tr. 458-62, 477-78).  If the record documents additional visits, the parties do not identify them.  As such, it is highly questionable whether Dr. Fleming's opinion should be accorded the weight due to a treating physician, and the ALJ does not explicitly designate him as a treating source.  Nevertheless, even under the treating physician rule, the ALJ's decision is sufficient.

First, the length of treatment and frequency of examination is one of the factors specifically identified by the regulations which an ALJ should consider when weighing a medical opinion.  The ALJ reasonably found that the brevity of the relationship weighed against ascribing great weight to Dr. Fleming's opinion.  Supportability and consistency is another factor set forth in the regulations, and the ALJ pointed out that Dr. Fleming's treatment does not contain a diagnosis that would support the severe limitations assessed, nor did Dr. Fleming point to specific clinical findings that support the limitations assessed.  (Tr. 20).  Plaintiff counters that

18

Dr. Fleming's opinion was not inconsistent with the opinions of several examining sources. (Doc. No. 14 at p. 10).  However, the ALJ did not reject Dr. Fleming's opinions because it was inconsistent with the opinions of examining but non-treating sources, but rather because it was inconsistent with the lack of any prescribed treatment and the Plaintiff's daily activities.  (Tr. 20). These "other factors" could reasonably be construed as contradicting Dr. Fleming's opinion. Earlier in the decision, the ALJ expressly noted that Plaintiff, despite his pain allegations, never received any prescription pain medications or injection therapy, a finding that Plaintiff does not challenge.  (Tr. 19).  Therefore, the Court cannot find that the ALJ did not give sufficiently good reasons for rejecting Dr. Fleming's opinion.

Finally, Plaintiff's reliance on *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) is misplaced to the extent he suggests the ALJ may *never* rely on State Agency physicians where those physicians offered their opinions prior to the introduction of subsequent medical treatment or documentation into the record.  (Doc. No. 14 at p. 8).  *Blakely* merely stands for the well-established proposition that an ALJ must "'give good reasons' for discounting the opinions of [a claimant's] treating physicians," and failure to do so violates 20 C.F.R. § 404.1527(d)(2). In *Blakely*, the opinion of one treating source was "not mentioned anywhere in the ALJ's opinion," while the opinions of two other treating sources were not weighed using the applicable factors set forth in the regulations.  581 F.3d at 407-409.

**B.  Non-Treating Source Opinions**

Plaintiff also takes issue with the ALJ's alleged rejection of the opinions of three non-treating physicians of record – Drs. Graham, Kata, and Alexander – all of whom examined him. (Doc. No. 14 at pp. 9-10).  Plaintiff contends that these opinions should have been given greater

19

weight than those of State Agency reviewing physicians who did not have the benefit of medical records submitted after 2012. (*Id.*)

Generally, more weight is given to the opinion of an examining versus non-examining source. *See* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). With respect to non-examining sources, ALJs must *consider* them as opinion evidence. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e). As for State Agency physicians, ALJs "are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists," but because said consultants are "highly qualified physicians, psychologists, and other medical specialists" ALJs must also *consider* their findings. *See* 20 C.F.R. § 404.1527(e)(1) & (2), 416.927(e)(1) & (2). When considering these opinions, ALJs should look to factors such as the nature of the relationship (i.e. examining or non-examining or the frequency of examination), supportability, consistency, and other factors. 20 C.F.R. §§ 404.1527(e), 416.927(e). Moreover, the regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 404.1527(e)(2)(ii), 416.927(e)(2)(ii).

An ALJ, when arriving at the RFC assessment, "must always consider and address medical source opinions [and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996); *see also Puckett v. Colvin*, 2014 U.S. Dist. LEXIS 55079, 2014 WL 1584166 at * 9 (N.D. Ohio April 21, 2014) (Vecchiarelli, M.J.) (explaining that, although the

ALJ was not required to evaluate opinions of consultative examiners with the same standard of

deference as would apply to an opinion of a treating source, he was required to "acknowledge

that [the examiners'] opinions contradicted his RFC finding and explain why he did not include

their limitations in his determination of Plaintiff's RFC" ).

The ALJ addressed Dr. Graham and Dr. Kata's opinions as follows:

As for the opinion evidence, I give little weight to consultative examiner Will
Graham, M.D.'s opinion that the claimant is restricted to sedentary work because
it is inconsistent with his own clinical observations and findings, particularly that
the claimant has no difficulty with overhead use of his arm and indicates only
"mild" limitations with his left hand function.  Sedentary supports that a person
would have standing and walking difficulties to a serious extent but the claimant's
pain issues and extensive daily tasks do not suggest such limitation.  (1F/5).

The opinion of John Kata, D.O. that the claimant can lift at a light level but is
otherwise restricted to sedentary activities, including sitting and standing for two
hours and walking for one hour, is given little weight in this case.  Dr. Kata's
opinion is based on a one-time only evaluation without the benefit of an ongoing,
treating relationship, is inconsistent with the record as a whole, and is supported
neither by the primary pain problem in this case  nor the daily activities in which
the claimant continues to engage.  (2F/3-4).

(Tr. 20).[5]

Here, the ALJ not only clearly considered the opinions of Dr. Graham and Dr. Kata, but

---

[5]  Though Plaintiff cites Dr. Alexander's observation that Plaintiff suffered from pain, stiffness,
instability, and had an antalgic gait, Plaintiff's brief contains no meaningful argument with respect
these observations other than to offer his own conclusion that these findings are inconsistent with light
work.  (Doc. No. 14 at p. 9).  As a result, the Court will not address such an undeveloped "argument"
mentioned briefly in passing.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues
adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are
deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way,
leaving the court to . . . put flesh on its bones.")  Moreover, Dr. Alexander merely seemed to recount
Plaintiff's subjective pain complaints, noted that swelling was "mild," does not actually mention
instability, but did note that at the one-time examination Plaintiff walked with an antalgic gait.  (Tr.
481-82).  Plaintiff does not explain how these symptoms required an RFC finding greater than that
found by the ALJ.  It also bears noting that less than a month later, Dr. Sziraky observed Plaintiff had a
"normal gait."  (Tr. 489).

he *explained* his reasons for ascribing them little weight.  The *explanation* requirement should not be construed as rigorously as the treating physician rule.  *See, e.g.*, *Jefferson v. Colvin*, 2015 U.S. Dist. LEXIS 94716 (N.D. Ohio 2015) (White, M.J.) (citations omitted).  Furthermore, the Sixth Circuit Court of Appeals has held that "the regulation requiring an ALJ to provide 'good reasons' for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one non-treating source's opinion over another." *Williams v. Colvin*, 2015 U.S. Dist. LEXIS 117105 (N.D. Ohio, Sept. 2, 2015) (*citing Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496 (6th Cir. 2006); *Chandler v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 90128 at **21-22 (S.D. Ohio, July 1, 2014) ("the ALJ is not required to give 'good reasons' for rejecting a nontreating source's opinions in the same way as must be done for a treating source").  As this Court has previously stated, while a claimant may disagree with the ALJ's explanation as to why little weight was assigned to a non-treating medical source, claimant's disagreement with the ALJ's rationale does not provide a basis for remand.  *See, e.g.*, *Steed v. Colvin*, 2016 U.S. Dist. LEXIS 114027 (N.D. Ohio Aug. 25, 2016).

With respect to Dr. Graham's opinion that Plaintiff would be "best suited to work in a sedentary capacity," the ALJ gave the opinion little weight because it was inconsistent with his own clinical observations and findings.  (Tr. 20).  While the ALJ's explanation could have been more detailed, the explanation is not inaccurate, as Dr. Graham's examination noted that Plaintiff had a "nonantalgic gait" with "no difficulty tandem walking, toe walking or heel walking," minimal tenderness in the lumbar spine, negative straight leg raising bilaterally, as well as 5/5 strength in the lower extremities.  (Tr. 247).  The ALJ also referred back to his earlier discussion wherein he noted the lack of any prescribed treatment for Plaintiff's alleged pain, and Plaintiff's

22

daily activities such as shopping without the use of an assistive device or motorized cart, mowing the lawn on a riding tractor for three hours at a time, living independently without assistance, and the ability to walk a dog.  (Tr. 19-20).

Turning to Dr. Kata's opinion, the ALJ's explanation employed several of the applicable factors.  The ALJ noted that Dr. Kata's opinion was based on a one-time examination not performed for treatment purposes, the opinion's inconsistency with the record as a whole, and again referred to Plaintiff's lack of treatment for his primary allegation of pain and daily activities which were inconsistent with the assessed limitations.  This explanation largely reiterates the explanations given for ascribing Dr. Graham and Dr. Fleming's opinions little weight.  As such, it too is sufficient.[6]

Plaintiff's argument – that the ALJ's reasoning is unclear or that the Court should require a more detailed explanation – essentially invites the Court to find that the explanation given by the ALJ for rejecting the opinions of non-treating sources are not sufficiently "good reasons" – much like the requirements of the treating physician rule.  The Court declines to judicially expand the treating physician rule to non-treating sources.

## VII.  Conclusion

For the foregoing reasons, the Court finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the decision is AFFIRMED.

IT IS SO ORDERED.

/s/ Kenneth S. McHargh

Date: September 30, 2016                U.S. Magistrate Judge

---

[6]  While not cited by the ALJ as a factor in his decision, Dr. Kata's assessment offers little by way of explanation as to why he found Plaintiff so limited.  (Tr. 256-57).